ORIGINAL

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

```
U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
            FILED

         FEB  1 2005

CLERK, U.S. DISTRICT COURT
By _____
              Deputy
```

SBC TECHNOLOGY RESOURCES, INC.,      )
                                     )
          *Plaintiff*,               )
                                     )
vs.                                  )
                                     )
INRANGE TECHNOLOGIES CORP.,          )
ECLIPSYS CORP., and                  )
RESOURCE BANCSHARES                  )
MORTGAGE GROUP, INC.,                )
                                     )
          *Defendants*.              )
_____)

HONORABLE David C. Godbey

CIVIL ACTION NO. 3:03-CV-418-N

## BRIEF IN SUPPORT OF SBC 'S MOTION TO
## (1) EXCLUDE EXPERT TESTIMONY AND
## (2) GRANT SUMMARY JUDGMENT ON
## INRANGE'S INVALIDITY AND LACHES DEFENSES

**TABLE OF CONTENTS**

**Page No.**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

     A.    Inrange Has Emphasized That Expert
           Opinion And Analysis Are Necessary
           For Its Invalidity Defense . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

     B.    Flouting This Court's Order, Inrange Made
           No Expert Disclosures On Invalidity On The
           Agreed Deadline . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

III.    ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

     A.    Standards For A Motion For Summary
           Judgment On An Invalidity Defense . . . . . . . . . . . . . . . . . . . . . . . . 10

     B.    Inrange Has Not Come Forward With
           Clear And Convincing Evidence To
           Support Any Invalidity Defense . . . . . . . . . . . . . . . . . . . . . . . . . . 10

     C.    Inrange Cannot Prove Invalidity Without Expert
           Testimony, Which Inrange Should Be Barred From
           Offering Based On Its Manipulative Conduct . . . . . . . . . . . . . . . . . . . 12

          1.    Inrange Must Offer Expert Testimony
                To Make An Invalidity Case . . . . . . . . . . . . . . . . . . . . . . . . . 12

          2.    The Fifth Circuit Endorses Exclusion Where
                Parties Flout Their Discovery Obligations . . . . . . . . . . . . . . . 13

          3.    This Court Should Exclude Any Expert
                Testimony On Invalidity That Inrange Tries
                To Offer — At Summary Judgment Or Trial . . . . . . . . . . . . . . . 15

a.  Inrange's After-The-Fact Excuses Cannot
    Provide A Reasonable Explanation For Its
    Complete Failure To Disclose . . . . . . . . . . . . . . . . . . . . . 16

b.  Inrange's Gamesmanship Irreparably
    Prejudiced SBC  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

c.  Anything Less Than Exclusion Would
    Reward Inrange's Underhanded Tactics . . . . . . . . . . . . . . 18

d.  Defendants' Conduct Bars Any Claim That Their
    Undisclosed Expert Testimony Is Important . . . . . . . . . . . 19

4.  Conclusion:  This Court Should Grant
    Summary Judgment For SBC On
    Inrange's Invalidity Defense . . . . . . . . . . . . . . . . . . . . . . . . 20

D.  SBC Diligently Pursued Inrange:
    There Is No Support For Inrange's Laches Defense . . . . . . . . . . . . . . . . 20

IV.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

# TABLE OF AUTHORITIES

**Page No.**

## CASES

*Akeva LLC v. Mizuno Corp.,*
     212 F.R.D. 306 (M.D.N.C. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 17, 18

*Anderson v. Liberty Lobby,*
     477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Apple Computer, Inc. v. Articulate Systems, Inc.,*
     234 F.3d 14 (Fed.Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Barrett v. Atlantic Richfield Co.,*
     95 F.3d 375 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 19

*Boardman v. Nat'l Medical Enterprises,*
     106 F.3d 840 (8th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Celotex Corp. v. Catrett,*
     477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 10, 21

*Chilcutt v. U.S.,*
     4 F.3d 1313 (5th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 20

*Fritter v. Datina,*
     181 F.R.D. 215 (N.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Geiserman v. MacDonald,*
     893 F.2d 787 (5th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

*Hammond Packing v. Arkansas,*
     212 U.S. 322 (1909) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Hickman v. Taylor,*
     329 U.S. 495 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 17

*Hull v. Eaton Corp.,*
     825 F.2d 448 (D.C. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Johns Hopkins University v. Cellpro, Inc.,*
     152 F.3d 1342 (Fed.Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Keener v. U.S.,*
   181 F.R.D. 639 (D. Mont. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Kioto Mfg. Co. Ltd. v. Turn-Key-Tech, LLC,*
   381 F.3d 1142 (Fed.Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 13, 21

*Mass. School of Law at Andover, Inc. v. American Bar Assn.,*
   914 F.Supp. 1172 (E.D. Pa. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*McRae v. Publications Intern. Ltd.,*
   985 F.Supp. 1036 (D.Kan.1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Metro Ford Truck Sales, Inc. v. Ford Motor Co.,*
   145 F.3d 320 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Quevedo v. Trans-Pacific Shipping, Inc.,*
   143 F.3d 1255 (9th Cir.1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Reliance Ins. Co. v. Louisiana Land and Exploration Co.,*
   110 F.3d 253 (5th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Robotic Vision Sys., Inc. v. View Eng'g, Inc.,*
   189 F.3d 1370 (Fed. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Schumer v. Laboratory Compuer Systems, Inc.,*
   308 F.3d 1304 (Fed.Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 10

*Scripps Clinic & Research Foundation v. Genentech, Inc.,*
   927 F.2d 1565 (Fed. Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 11

*Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc.,*
   73 F.3d 546 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 18

*Trilogy Communications, Inc. v. Times Fiber Communications, Inc.,*
   109 F.3d 739 (Fed.Cir.1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Union Carbide Corp. v. American Can Co.,*
   724 F.2d 1567 (Fed.Cir.1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*In re Wands,*
   858 F.2d 731 (Fed.Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 11

*Wanlass v. Fedders Corp.,*
   145 F.3d 1461 (Fed. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## STATUTES

Fed.R.Civ.P. 26 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Fed.R.Evid. 701 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

35 U.S.C. § 102 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 10, 12

35 U.S.C. § 103 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

35 U.S.C. § 112 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 8, 10

35 U.S.C. § 282 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

# I. **INTRODUCTION**

This is a patent infringement case involving storage area networks (SANs), which save money and resources by separating storage from host computers, and allowing those host computers to share storage resources. As detailed in the Claim Construction briefs of plaintiff SBC Technology Resources Inc.("SBC"), the invention of the patent-in-suit, United States Patent No. 5,530,845 (the "'845 patent"), enables the modern SAN by allowing host computers and storage devices using different protocols (*e.g.*, various "Fibre Channel" protocols and the "FICON" protocol) to operate together in a single SAN.

In its May 5, 2003 Answer, Inrange alleged with no specificity that the '845 patent is "invalid and void." Inrange provided minimal detail in discovery, stating that its defense was based "upon opinions of retained experts that will be disclosed in accordance with the Court's schedule." When the Court scheduled deadline[1] for Inrange's invalidity expert disclosures arrived, however, Inrange disclosed nothing.

"Discovery ... is not a one-way proposition," *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). Nothing is more fundamental. Inrange has not only violated the fundamental rule of mutuality, it has done so in a maximally deceptive and manipulative manner. Specifically, Inrange: agreed to a January 11, 2005 deadline for **mutual** expert disclosures, opposed SBC's motion to **mutually** extend the deadline, demanded that SBC serve its expert report via facsimile on the deadline notwithstanding SBC's pending motion – but produced **nothing** itself.

---

[1] The "Court's schedule" (per its August 6, 2003 Scheduling Order) set a December 3, 2004 deadline (150 days before the May 2, 2005 trial date) for expert disclosures on issues where a party bears the burden of proof, *e.g.*, invalidity for Inrange. The Court's Scheduling Order stated that the parties could extend that date by written agreement, and the parties extended the date to January 11, 2004.

Inrange offers a litany of after-the-fact excuses, but there is not and cannot be any excuse for Inrange's conduct. No matter what excuse Inrange concocts after the fact, it should have raised the excuse before the deadline – so the parties could have sought a **mutual** extension. Inrange did not even attempt to seek an extension; it simply ignored the Court ordered deadline for serving expert disclosures. Worse yet, Inrange opposed SBC's request for a **mutual** extension – so that it could gain the tactical advantage of having SBC's report without producing its own.

Like many other parties that have obstructed and manipulated the discovery process, Inrange must be sanctioned. The only sanction that will undue Inrange's unfair advantage in this case is to exclude any expert testimony from Inrange on issues where Inrange bears the burden of proof, *i.e.*, the expert disclosures that were due from Inrange on the agreed January 11, 2005 deadline. Anything else will reward Inrange and encourage others to ignore Court Orders and the mutual disclosure requirements essential to the Federal Rules.

Inrange bears the burden of proving invalidity by clear and convincing evidence but has not come forward with any evidence to meet that burden. Further, Inrange admits that it cannot make a case for invalidity without expert testimony, and it has lost the right to present any such testimony. In short, Inrange has not and cannot make a prima facie case on its invalidity defense. SBC is entitled to summary judgment on the issue -- summary judgment that the '845 patent is not invalid. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Inrange's May 5, 2003 answer also alleged  that SBC's case is barred under the doctrine of laches. Inrange has not and cannot demonstrate any SBC delay that would give rise to a laches defense. Accordingly, SBC requests summary judgment on this issue as well.

## II. BACKGROUND

A.  **Inrange Has Emphasized That Expert
    Opinion And Analysis Are Necessary
    For Its Invalidity Defense**

Inrange's May 5, 2003 Affirmative Defenses allege invalidity in a shotgun fashion:

> In view of the prior art which predates the filing of the application
> resulting in the '845 patent and/or the making of the alleged
> invention claimed in the '845 patent, and further in view of basic
> deficiencies in the '845 patent and in the manner in which the '845
> patent was filed, prosecuted and/or examined in the U.S. Patent &
> Trademark Office, it is invalid and void for failure to meet the
> requirements of the Patent Laws of the United States including,
> without limitation, provisions of 35 U.S.C. § 101, 102, 103, 111,
> 112, 115, 116, 120, 251-252, and 254-256.

(App. 3-4.)

On September 11, 2003, SBC served Inrange with three interrogatories (Nos. 7-9)
seeking Inrange's invalidity contentions.  In its first response, Inrange simply refused to answer.
Among its fifteen general objections (based on which Inrange provided not a single answer),
Inrange took the position that discovery should be stayed pending the Court's claim construction:

> Inrange further objects to SBC's Interrogatories on the
> grounds that, at the present time, there are pending before the court
> two motions filed by Eclipsys (in which Inrange joins in part) both:
> for early determination of claim construction and a procedure
> leading to a <u>Markman</u> hearing; and for a stay of all discovery
> pending the outcome of that <u>Markman</u> hearing.  Because the Court
> has not yet ruled on Eclipsys' request for relief, Inrange will defer
> all substantive responses to discovery, including Interrogatory
> Answers, until such time as the Court grants Eclipsys' motions or
> otherwise acts upon the request for stay of discovery.

(App. 10.)

On October 24, 2003, Inrange joined defendant Eclipsys[2] in a motion to stay discovery — including expert discovery — until the claim construction phase is complete. (App. 21-22.) On April 22, 2004, this Court **denied** that motion. (App. 23-24, April 22, 2004, Order denying Eclipsis'/Inrange's motion to stay discovery pending claim construction.) Inrange was obligated to establish its alleged invalidity defense in discovery, but failed to do so. After a threat by SBC to file a motion to compel answers to SBC's interrogatories, Inrange agreed to supplement, but now it raised another excuse – the need for expert testimony. In its June 29, 2004 first supplemental responses, Inrange still offered no tangible position based on the need for expert opinion testimony to establish its invalidity case:

> Inrange states that its invalidity contentions will be based, in part, upon legal analysis of its counsel and <u>upon opinions of retained experts that will be disclosed in accordance with the Court's schedule</u>, and upon documents being produced and to be produced in discovery.

(App. 37-39, emphasis added.)

SBC filed a motion to compel substantive answers. After a Court Order, Inrange served its second supplemental responses on September 21, 2004. Inrange's second supplemental response to SBC Interrogatory No. 7, concerning Inrange's allegations of invalidity by "anticipation," identified no less than eight[3] allegedly invalidating prior art patents. (App. 51-53.) "Anticipation" under 35 U.S.C. §102, however, requires proof by clear and convincing evidence that a <u>single piece of prior art</u> (*e.g.*, patent or printed publication) includes <u>every element of the</u>

---

[2]Eclipsys has settled with SBC and is no longer a party to this case.

[3]Inrange's second supplemental answer to SBC Interrogatory No. 7 identifies U.S. Patent No. 4,729,835 as one of the eight prior art patents Inrange relies on to support its allegation that the '845 patent is invalid under 35 U.S.C. § 102. (App. 53.) The prior art patent is entitled "Process For Waste Treatment" and has absolutely nothing to do with the technology at issue in this case.

asserted claims. *Schumer v. Laboratory Compuer Systems, Inc.*, 308 F.3d 1304, 1316 (Fed.Cir. 2002)(defendant "failed to prove by clear and convincing evidence on summary judgment that [the prior art] disclosed 'each and every limitation' of [the asserted claim] as is required to prove anticipation."). Inrange did not offer such element-by-element proof, or even element-by-element argument, for any of this shotgun of allegedly invalidating prior art references. (App. 51-53.) Instead, Inrange continued to emphasize that it "will rely upon **further analysis and study of its experts** on the issue of anticipation under 35 U.S.C. §102." (App. 53, emphasis added.)

Concerning Inrange's allegations of invalidity by "obviousness" under 35 U.S.C. §103[4], Inrange did not even identify a basis for the defense, but stated that expert testimony would be necessary in the event Inrange was to form one:

> At this time, and **subject to supplementation by experts** and additional fact discovery, Inrange states that if the '845 patent is given a sufficiently narrow construction that is consistent with the specification, the prior art of record, and the ordinary hearing of the contested claims as understood by one of ordinary skill in the relevant art, **the patent so construed may not be invalid as obvious**.

> (App. 54-55, emphasis added.)

_____

[4]35 U.S.C. §103 states, in pertinent part:

(a) A patent may not be obtained though the invention is not identically as disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sough to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

Regarding invalidity under 35 U.S.C. §112[5], Inrange stated that the '845 patent lacks an "enabling" disclosure of the claimed invention. (App. 57.) The enablement defense involves an assessment of whether the '845 patent disclosure would have enabled a person of ordinary skill in the art at the time the application was filed to make and use the claimed invention without undue experimentation. *Scripps Clinic & Research Foundation v. Genentech, Inc.*, 927 F.2d 1565, 1571 (Fed. Cir. 1991). "Factors to be considered in determining whether a disclosure would require undue experimentation" include:

> (1) the quantity of experimentation necessary, (2) the amount of direction or guidance presented, (3) the presence or absence of working examples, (4) the nature of the invention, (5) the state of the prior art, (6) the relative skill of those in the art, (7) the predictability or unpredictability of the art, and (8) the breadth of the claims.

> *In re Wands*, 858 F.2d 731, 737 (Fed.Cir. 1988).

As with any invalidity defense, Inrange must prove lack of enablement by clear and convincing evidence. *Johns Hopkins University v. Cellpro, Inc.*, 152 F.3d 1342, 1359-60 (Fed.Cir. 1998)(upholding district court's grant of summary judgment in favor of patentee where infringer failed to demonstrate lack of enablement by clear and convincing evidence.) Inrange's interrogatory answer does not even address the knowledge of a person of ordinary skill in the art,

---

[5]35 U.S.C. §112 states, in pertinent part:

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out the invention.

let alone the eight factors that must be considered in determining whether that person would require "undue experimentation" to make and use the '845 claimed invention.[6]

In sum, Inrange's interrogatory answers concerning its invalidity defense: (1) fail to provide even detailed contentions, let alone clear and convincing **evidence** sufficient to support an invalidity defense; and (2) emphasize repeatedly that expert opinion, analysis and testimony are required to establish an invalidity defense.

**B.    Flouting This Court's Order, Inrange Made No Expert Disclosures On Invalidity On The Agreed Deadline**

This Court's August 6, 2003 Scheduling Order set the date for expert disclosures under Rule 26(a)(2), *i.e.*, on issues where the party bears the burden of proof (*e.g.*, infringement for SBC, invalidity for Inrange) for December 3, 2004. (App. 63-64.) The Scheduling Order also stated that the parties could extend the deadline by mutual agreement. (App. 63.)

The parties scheduled a mediation for November 10, 2004, and as a result agreed to extend the expert disclosure deadline to December 17, 2004. (App. 66.) After Inrange cancelled the first mediation date, the parties rescheduled and again agreed to extend the deadline for exchanging expert reports, this time to January 7, 2005. (App. 67.) Due to a mix-up with the mediator, Inrange postponed the second mediation. (App. 68-69.) SBC raised another mutual extension of the deadline to exchange expert reports, and Inrange refused, other than a modest

---

[6] In a letter dated January 28, 2005, Inrange raised, for the first time, another defense under 35 U.S.C. § 112: "best mode." (App. 96.) Inrange offers nothing beyond its allegation-by-letter to support this defense. It is no more established than Inrange's other defective defenses of anticipation, obviousness and lack of enablement.

extension to January 11, 2005 to accommodate the need for certain deposition transcripts and a personal medical issue. (App. 70.)

On December 17, 2004, SBC filed a motion to amend the Complaint and adjourn the remaining dates (including the expert disclosure dates). Inrange opposed the motion, and never suggested that it was unable to meet the agreed <u>mutual</u> deadline to make its expert disclosures. To the contrary, on the January 11th, 2005 deadline, Inrange wrote SBC stating:

> [We] are expecting that expert disclosures will be made by facsimile
> (or e-mail) in addition to overnight or mail delivery. We do not
> want to eat into our response time by waiting a day or three for
> delivery of plaintiff's expert disclosures.

(App. 72.)

Inrange also telephoned SBC's counsel at approximately 5:00 p.m. that day to confirm that SBC would produce its expert report by facsimile. (App. 73-74, Decl. of Frank Angileri.) SBC agreed to Inrange's request, and promptly faxed its expert report to Inrange. (*Id.*) The next day, SBC learned for the first time (via a letter apparently faxed the previous night) that Inrange would <u>not</u> produce its own expert report on the agreed due date:

> Inrange is not able, at this time, to provide any disclosure of expert
> opinions, under Fed. R. Civ. P. 26(a)(2)(B) on its affirmative
> defense on invalidity for three principal reasons. First, the Court
> has not issued any claim construction rulings that would give
> Inrange the grounds on which to know the full scope of its invalidity
> contentions. Until and unless the Court rules on claim construction,
> which has been pending since October, 2004, Inrange cannot know
> whether and which bases for invalidity may apply to the '845 patent.
> Second, SBC has failed, to date, to give any detailed, reasonable
> description of its claim of infringement (perhaps the expert reports
> due from SBC today will shed sufficient light in that regard). Third,
> the fact discovery from inventors (and possibly other SBC
> witnesses) has been delayed, at SBC's request; from early
> December to later this month. Certain grounds for invalidity that
> Inrange may pursue, and for which an expert report may otherwise

be appropriate, cannot be known until after those depositions are concluded.

(App. 75.)

Incredibly, Inrange sent this second letter exactly 42 minutes after sending its earlier demand that

the exchange reports be exchanged by facsimile. (App. 71 at 4:59 p.m.; App. 75 at 5:41 p.m.)

SBC's counsel was unaware of this letter when he agreed to deliver and delivered SBC's report

via facsimile on January 11, 2005. (App. 73-74.)

Notwithstanding Inrange's repeated admission that expert testimony is essential to

its invalidity defense, Inrange disclosed <u>nothing</u> on the <u>agreed</u>, **mutual** January 11, 2005 deadline

for serving expert disclosures on issues where the parties bear the burden of proof (infringement

for SBC, invalidity for Inrange).

# III. ARGUMENT

A.    **Standards For A Motion For Summary**
      **Judgment On An Invalidity Defense**

Inrange bears the burden of proof on its invalidity defense. Accordingly, SBC need only point out the absence of evidence supporting Inrange's defense; no affirmative evidence from SBC is required.   *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986).  Further, because the '845 patent is presumed valid under 35 U.S.C. §282,  Inrange must prove invalidity – regardless of the ground – by clear and convincing evidence. *Apple Computer, Inc. v. Articulate Systems, Inc.*, 234 F.3d 14, 20 (Fed.Cir. 2000) ("Summary judgment of invalidity, therefore, must be predicated on facts established by clear and convincing evidence.") Any evidence presented on summary judgment must be viewed "through the prism" of this higher standard of proof. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).  Thus, Inrange must come forward with enough evidence for a reasonable juror to find invalidity by clear and convincing evidence.

B.    **Inrange Has Not Come Forward With**
      **Clear And Convincing Evidence To**
      **Support Any Invalidity Defense**

To date, Inrange has come forward with **no evidence** of invalidity, let alone evidence sufficient to prove invalidity by clear and convincing evidence. To date, Inrange has raised three types of invalidity defenses: "anticipation" under 35 U.S.C. §102, lack of "enablement" under 35 U.S.C. §112, and lack of "best mode" under 35 U.S.C. §112.

To make an anticipation case, Inrange must prove by clear and convincing evidence that every element of the asserted claims is present in a single prior art reference. *Schumer,* 308

-10-

F.3d at 1316. This requires element-by-element proof, *i.e.*, analysis and testimony showing where each element of the asserted claims is found is the alleged prior art reference. *Kioto Mfg. Co. Ltd. v. Turn-Key-Tech, LLC*, 381 F.3d 1142, 1152 (Fed.Cir. 2004). Inrange has not even set forth an invalidity contention on the required element-by-element basis, let alone offered clear and convincing evidence to support the contention. Inrange cannot meet its summary judgment burden. *Apple Computer, Inc.*, 234 F.3d at 20.

As stated above, the lack of enablement defense involves an assessment of whether the '845 patent disclosure would have enabled a person of ordinary skill in the art at the time the application was filed to make and use the claimed invention without undue experimentation. *Scripps*, 927 F.2d at 1571. This assessment is based on the eight factors listed on page 6. *Wands*, 858 F.2d at 737. Inrange has not even addressed, let alone provided evidence on, these numerous technical questions raised by the enablement defense.

Invalidity for an alleged failure to comply with the "best mode" requirement "requires proof by clear and convincing evidence that the inventor knew of and concealed a better mode of carrying out the invention than was set forth in the specification." *Scripps*, 927 F.2d at 1578. Like the others, Inrange's latest defense is lobbed without any evidentiary support whatsoever. (App. 96.)

In short, Inrange has not come remotely close to proving invalidity by clear and convincing evidence.

**C.**   **Inrange Cannot Prove Invalidity Without Expert
Testimony, Which Inrange Should Be Barred From
Offering Based On Its Manipulative Conduct**

**1.**   **Inrange Must Offer Expert Testimony
To Make An Invalidity Case**

Beyond the fact that Inrange repeatedly admits that expert analysis and opinion

testimony are required to establish its invalidity defense, the Federal Rules of Evidence prohibit

the introduction of opinion testimony through non-expert witnesses:

> **If the witness is not testifying as an expert, the witness'
> testimony in the form of opinions or inferences is limited to those
> opinions or inferences which are** (a) rationally based on the
> perception of the witness, and (b) helpful to a clear understanding
> of the witness' testimony or the determination of a fact in issue, and
> (c) **not based on scientific, technical, or other specialized
> knowledge within the scope of Rule 702.**

(Fed R.Evid. 701, emphasis added.)

Mere assertions of invalidity, without substantive analysis and testimony from one

skilled in the art, cannot meet the "clear and convincing" threshold in cases involving technical

subject matter. *Kioto,* 381 F.3d at 1152 (Fed.Cir. 2004) ("The testimony is insufficient if it is

merely conclusory.") The patent asserted in *Kioto* was directed toward a method for strengthening

injection-molded plastics by cross-lamination. *Id.* at 1145. The plaintiff appealed the district

court's ruling that the asserted patent was anticipated under 35 U.S.C. §102 by "JP '802," because

the ruling was not based on a proper expert analysis. *Id.* Recognizing that a defendant carries "an

especially heavy burden" when challenging the validity of an asserted patent, the Federal Circuit

held:

> We have consistently explained what is necessary to show
> anticipation by a given reference:

**Typically, testimony concerning anticipation must be testimony from one skilled in the art and must identify each claim element, state the witnesses' interpretation of the claim element, and explain in detail how each claim element is disclosed in the prior art reference.** The testimony is insufficient if it is merely conclusory.

* * *

The district court erred in concluding that explanatory testimony relating the JP '082 reference to the [asserted] patent was unnecessary because of this Court's decisions in *Union Carbide Corp. v. American Can Co.*, 724 F.2d 1567 (Fed.Cir.1984) . . . . In *Union Carbide*, this Court affirmed a district court's grant of summary judgment of invalidity of a patent covering a very simple means and method of dispensing plastic bags.  724 F.2d at 1568. In that decision, even though the alleged infringer did not provide explanatory expert testimony regarding the prior art references, we found anticipation because the references and the patent were "easily understandable" and the patentee, rather than the alleged infringer, provided explanatory analysis regarding the prior art references.  *Id.* at 1573.  The JP '082 patent is not an "easily understandable" patent.

*Id.* at 1151-52(emphasis added, citations omitted).

Worse than the defendant in *Kioto*, Inrange has <u>no expert testimony whatsoever</u> to support its invalidity contentions.  Despite repeatedly acknowledging that expert analysis and opinion testimony is required for each of its invalidity defenses, Inrange has offered nothing.


**2.    The Fifth Circuit Endorses Exclusion Where
        Parties Flout Their Discovery Obligations**

Inrange has flouted this Court's August 6, 2003 Scheduling Order, and its own agreements with SBC, to manipulate discovery and create an irreparable advantage: possession of SBC's burden proofs before disclosing its own burden proofs.

-13-

Not surprisingly, courts have come down hard on parties who flagrantly disregard their discovery obligations. Indeed, "the flagrancy of a party's behavior must be directly proportionate to the severity of the sanction imposed." *Chilcutt v. U.S.*, 4 F.3d 1313, 1322, n.23 (5th Cir. 1993). The defendant in *Chilcutt* engaged in manipulative conduct similar to that of Inrange. *Id.* at 1316-19. The defendant's "empty promises" and failure to make required disclosures in discovery were so egregious[7] that Judge McBryde eliminated the defendant's liability defense altogether. *Id.* at 1319 This discovery sanction was upheld:

> When parties present no valid objections to discovery and intentionally withhold properly requested information, courts have the authority to presume that the party's refusal to produce the information is "an admission of the want of merit in the asserted defense."

> *Id.* at 1324 (quoting *Hammond Packing v. Arkansas*, 212 U.S. 322, 351 (1909)).

In *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc.*, 73 F.3d 546, 571-73 (5th Cir. 1996), the Fifth Circuit upheld the exclusion of the defendant's late-filed and incomplete expert report as a violation of Judge Hoyt's scheduling order and Fed.R.Civ.P. 26. The Fifth Circuit also rejected the defendant's attempt to introduce its expert testimony under the guise of "supplementary disclosures," as Inrange attempts to do in this case:[8]

---

[7] Similar to the present case, plaintiff's counsel in *Chilcutt* spoke with the defendant's counsel on numerous occasions to discuss discovery deadlines. The defendant made representations that discovery would be forthcoming, but ultimately made no disclosure. (App. 66, 67, 71-72.)

[8] Inrange's January 11, 2005 letter to SBC states:

[Inrange] reserves the right to supplement its past interrogatory answers, including supplemental expert disclosures and opinions on invalidity defenses in a manner consistent with Fed. R. Civ. P. 26(e)(1 and 2).
(App. 76.)

-14-

The purpose of rebuttal and supplementary disclosures is just that – to rebut and to supplement. These disclosures are not intended to provide an extension of the deadline by which a party must deliver the lion's share of its expert information.

*Id.* at 571.

In *Metro Ford Truck Sales, Inc. v. Ford Motor Co.*, 145 F.3d 320, 324 (5th Cir. 1998), the Fifth Circuit upheld Judge Fish's decision on this same issue:

Metro urges this court to recognize the filing of Dr. Leffler's report as timely under the supplemental disclosure deadline some three months later. We decline to do so. <u>The purpose of supplementary disclosures is just that – to supplement. Such disclosures are not intended to provide an extension of the expert designation and report production deadline.</u> We therefore hold that the district court did not abuse its discretion in refusing to modify the scheduling order and in enforcing the time deadlines.

(Emphasis added.)

This conclusion is not limited to the Fifth Circuit:

To construe supplementation to apply whenever a party wants to bolster or submit additional expert opinions would reek havoc in docket control and amount to unlimited expert opinion preparation.

*Akeva LLC v. Mizuno Corp.*, 212 F.R.D. 306, 310 (M.D.N.C. 2002).

3.   **This Court Should Exclude Any Expert Testimony On Invalidity That Inrange Tries To Offer — At Summary Judgment Or Trial**

The Fifth Circuit has established a four-factor test to determine whether exclusion of testimony is appropriate. As established in detail below, each of the following factors favor SBC:

(1) the explanation, if any, for the party's failure to comply with the discovery order;

(2) the prejudice to the opposing party of allowing the witness to testify;
(3) the possibility of curing such prejudice by granting a continuance; and
(4) the importance of the witness' testimony.

*Barrett v. Atlantic Richfield Co.*, 95 F.3d 375, 380 (5th Cir. 1996).

### a.    Inrange's After-The-Fact Excuses Cannot Provide A Reasonable Explanation For Its Complete Failure To Disclose

Inrange offers three after-the-fact excuses as to why it violated the Court's Scheduling Order.    First, Inrange blames this Court for failing to issue its claim construction rulings.    (App. 75.)    But, this Court denied Inrange's motion to stay discovery pending claim construction.    (App. 23.)

Next, Inrange blames SBC for allegedly failing to disclose its infringement contentions.    (App. 75.)    This excuse fails for three reasons.    First, Inrange is simply wrong. SBC provided its initial infringement charts to Inrange more than a month before the January 11, 2005 deadline, and Inrange never complained.[9]    Second, the deadline at issue here was, for SBC, to produce its expert report on infringement, setting forth its detailed infringement contentions. SBC did so, on time.    (App. 77-95, filed under seal.)    Finally, Inrange does not need SBC's infringement contentions to establish an invalidity defense.    *Robotic Vision Sys., Inc. v. View Eng'g, Inc.*, 189 F.3d 1370, 1377 (Fed. Cir. 1999).    Notably, Inrange did not need SBC's infringement contentions when Inrange pled invalidity as an affirmative defense in its answer.

Finally, Inrange claims that it has not had enough time to complete the necessary discovery.    (App. 75.)    Yet, Inrange never asked SBC, or this Court, for any extension of the

---

[9] Inrange never filed a motion to compel further answers.    Now, after it has flouted the agreed deadline for expert disclosures, Inrange has suddenly discovered discovery violations by SBC.

-16-

January 11, 2005 deadline. To the contrary, Inrange is <u>opposed</u> SBC's December 17, 2004 Motion for Continuance.

Regardless, whatever excuses Inrange raises now, they should have been presented to SBC or the Court before the deadline passed – so that any extension was **mutual**. Inrange's gamesmanship voids any excuse raised after-the-fact.

> **b.      Inrange's Gamesmanship Irreparably**
> **Prejudiced SBC**

SBC bases its claim of prejudice on Inrange's manipulative, self-serving behavior: luring SBC to the agreed upon deadlines for expert reports while granting itself an unlawful extension. Despite its pending motion for an extension of the calendar, SBC submitted its expert report on time and in good faith. Inrange gave no indication it was not reciprocating until it was too late.

"Discovery ... is not a one-way proposition," *Hickman,* 329 U.S. at 507, nor is it "poker where the cards are turned up one at a time." *Mass. School of Law at Andover, Inc. v. American Bar Assn.*, 914 F.Supp. 1172, 1178 (E.D. Pa. 1996). Surveying cases on this issue, the court in *Akeva* held:

> **The factors involving docket control planning are sufficiently**
> **important to alone justify the exclusion of an untimely disclosed**
> **expert report or opinion even in absence of prejudice to the**
> **opposing party.** *Trilogy Communications, Inc. v. Times Fiber Communications, Inc.*, 109 F.3d 739, 745 (Fed.Cir.1997).Where a plaintiff operates in bad faith or with deliberation, exclusion of evidence is often appropriate. *Quevedo v. Trans-Pacific Shipping, Inc.*, 143 F.3d 1255 (9th Cir.1998)(one and one-half month delay with no explanation); *Trilogy Communications, Inc.*, 109 F.3d 739 (not only untimely but attempt to squeeze in second expert opinion, rebuttal opinion, and affidavit); *Reliance Ins. Co. v. Louisiana Land and Exploration Co.*, 110 F.3d 253 (5th Cir. 1997) (only ten

days late, prior to the end of discovery period, but intentional delay); *Boardman v. Nat'l Medical Enterprises*, 106 F.3d 840 (8th Cir. 1997); *McRae v. Publications Intern. Ltd.*, 985 F.Supp. 1036 (D.Kan.1997)(parties warned that expert discovery deadlines would be strictly enforced, exclusion to avoid trial by ambush); *Fritter v. Datina*, 181 F.R.D. 215 (N.D.N.Y. 1998) (deliberate delay in testing of over one to two months in order to save costs); *Keener v. U.S.*, 181 F.R.D. 639 (D. Mont. 1998) (one month and a dramatically different opinion).

*Akeva*, 212 F.R.D. at 311 (with complete citations).

Inrange cannot avoid the fact that it sought to manipulate the discovery process to gain an unfair tactical advantage over SBC. Inrange has the advantage of having SBC's expert disclosures on infringement before it even begins preparing any expert disclosures on validity. Inrange will always have that wrongfully obtained advantage unless Inrange's experts are excluded.

     c.     **Anything Less Than Exclusion Would<br>Reward Inrange's Underhanded Tactics**

The improper advantage gained by Inrange through its abuse of the discovery process cannot be cured through supplementation by Inrange or mutual continuance of the deadline. *See Geiserman v. MacDonald*, 893 F.2d 787, 792 (5th Cir. 1990) ("A continuance would not deter future dilatory behavior, nor serve to enforce . . . court imposed scheduling orders."); *Sierra Club* 73 F.3d at 573 ("While a continuance would have given [the plaintiff] more time to review the late disclosures, such a measure would neither punish [the defendant] for its conduct nor deter similar behavior in the future.") (quoting *Bradley v. United States*, 866 F.2d 120, 126 (5th Cir. 1980). *Geiserman* holds:

the flouting of discovery deadlines [is] a particularly abhorrent feature of today's trial practice. They increase the cost of litigation,

to the detriment of the parties enmeshed in it; they are one factor
causing disrespect for lawyers and the judicial process; and they fuel
the increasing resort to means of non-judicial dispute resolution.
Adherence to reasonable deadlines is critical to restoring integrity
in court proceedings.    We will not lightly disturb a court's
enforcement of those deadlines . . . .

*Geiserman,* 893 F.2d at 792.

### d.    Defendants' Conduct Bars Any Claim That Their Undisclosed Expert Testimony Is Important

Inrange's complete failure to make any expert disclosures undermines any claim that

the testimony is important.   If the testimony were truly important to Inrange, the report would

have been disclosed in a proper and timely fashion. *See Barrett,* 95 F.3d at 381 ("[T]he claimed

importance of Plaintiffs' expert testimony merely underscores the need for Plaintiffs to have

complied with the court's deadlines or **at least informed the trial judge in advance** if good faith

compliance was not possible.") (emphasis added); *see also Geiserman,* 893 F.2d at 792 ("The

claimed importance of expert testimony underscores the need for Geiserman to have timely

designated his expert witness."). *Cf. Hull v. Eaton Corp.,* 825 F.2d 448, 452 (D.C. Cir. 1987)

("[A] judge [may] sanction a party's continued and unexcused refusal to name an expert witness

by precluding testimony from any such witness without first determining how badly the party

needs the witness.")

Indeed, in the 5th Circuit it is appropriate to presume "want of merit" to a defense

when the defendant fails to produce:

When parties present no valid objections to discovery and
intentionally withhold properly requested information, courts have
the authority to presume that the party's refusal to produce the
information is "an admission of the want of merit in the asserted
defense."

-19-

*Chilcutt*, 4 F.3d at 1324 (quoting *Hammond Packing Co. v. Arkansas*, 212 U.S. 322, 351 (1909)).

**4.    Conclusion:  This Court Should Grant
Summary Judgment For SBC On
Inrange's Invalidity Defense**

This Court should exclude any expert testimony offered by Inrange on invalidity. In the event Inrange suddenly discovers expert testimony on invalidity and attempts to offer it in opposition to this motion for summary judgment, this Court should strike it.

In short, Inrange has waived by its conduct the right to offer expert testimony in support of its invalidity defense.  Without that testimony, Inrange by its own admission cannot make its case.  Summary judgment on this issue is appropriate.

**D.    SBC Diligently Pursued Inrange:
There Is No Support For Inrange's Laches Defense**

Inrange also asserted the laches defense in its Answer.  (App. 4.)  To establish this defense, Inrange must prove (1) that SBC unreasonably delayed in filing this suit (from the time it learned of Inrange's infringement) and (2) that Inrange was prejudiced as a result.  *Wanlass v. Fedders Corp.*, 145 F.3d 1461, 1463-64 (Fed. Cir. 1998).  Inrange cannot make a laches case. Unreasonable delay is not presumed until it reaches six years.  *Id.* at 1464.  Inrange did not introduce the accused product, its FC/9000, until 2000, and SBC sued in 2003.  Accordingly, this Court should also grant summary judgment in SBC's favor on Inrange's laches defense.

## IV. CONCLUSION

Inrange has not presented and should not, in view of its discovery misconduct, be allowed now to present expert testimony on its heretofore undefined invalidity defense. Without expert opinion testimony, Inrange cannot meet its "especially heavy burden" to prove the asserted claims invalid by clear and convincing evidence. *Kioto Mfg. Co. v. Turnkey Tech., LLC*, 381 F.3d 1142, 1152 (Fed.Cir. 2004). Inrange cannot establish a *prima facie* case of invalidity or laches, and summary judgment in SBC's favor is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Respectfully submitted,

By: _____

Joe Kendall
Provost Umphrey, L.L.P.
Texas State Bar No. 11260700
3232 McKinney Avenue, Suite 700
Dallas, TX 75204
Tel:    (214) 744-3000
Fax:    (214) 744-3015

Ernie L. Brooks
Thomas A. Lewry
Frank A. Angileri
Mark D. Chuey
Brooks Kushman P.C.
1000 Town Center
Twenty-Second Floor
Southfield, Michigan 48075-1238
Tel:    (248) 358-4400
Fax:    (248) 358-3351

*Attorneys for Plaintiff SBC Technology Resources*

Dated:   2|1|05

-21-