**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **SBC TECHNOLOGY RESOURCES, INC.,** | ) | |
| | ) | |
| Plaintiff, | ) | HONORABLE David C. Godbey |
| | ) | |
| vs. | ) | CIVIL ACTION NO. 303-CV-418-N |
| | ) | |
| **INRANGE TECHNOLOGIES CORP.;** | ) | |
| **ECLIPSYS CORP.; and** | ) | |
| **RESOURCE BANCSHARES** | ) | |
| **MORTGAGE GROUP, INC.,** | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**REPLY BRIEF IN SUPPORT OF INRANGE'S MOTION FOR SUMMARY JUDGMENT**
**OF NONINFRINGEMENT**

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................ii

TABLE OF AUTHORITIES..........................................................................iii

I.      INTRODUCTION............................................................................1

II.     BRIEF STATEMENT OF THE FACTS..................................................1

III.    ARGUMENT...................................................................................2

      A.      The FC/9000 Does Not Literally Infringe
            Claim 1 or 34 of the '845 Patent.......................................................2

            1.      The FC/9000 is Not the "Storage Controller"
                  Required in the Asserted Claims...............................................2

            2.      The FC/9000 Does Not Contain the Required
                  "Interface" to "Target Units".................................................8

            3.      The FC/9000 is Not Implemented With a
                  "General Purpose Computer"..................................................13

      B.      The Inrange FC/9000 Switch Does Not Infringe
            the '845 Patent Under the Doctrine of Equivalents...................................17

      C.      Inrange Does Not Induce Nor Contribute to
            Infringement of the '845 Patent.......................................................17

      D.      SBC Has Abandoned Any Infringement Claims
            Other Than Under Claims 1 and 34 of the '845 Patent..............................17

IV.     CONCLUSION...............................................................................18

This document contains information subject to the Protective Order entered in this action.  Its contents are not to be
revealed or made public, except by Order of the Court.

## TABLE OF AUTHORITIES

Bell Atlantic Network Services, Inc. v.
Covad Communications Group, Inc., 262 F.3d 1258 (Fed. Cir. 2001)........................3, 14, 16

Biovail Corp. International v. Andrx Pharmaceuticals, Inc.,
57 U.S.P.Q.2d 1813 (Fed. Cir. 2001)............................................................14-15

Bristol-Myers Squibb Co. v. Ben Venue Labs. Inc.,
246 F.3d 1368 (Fed. Cir. 2001)...................................................................13

Desper Products, Inc. v. Qsound Labs, Inc.,
157 F.3d 1325 (Fed. Cir. 1998)...................................................................14

Elkay Mfg. Co. v. Ebco Mfg. Co., 192 F.3d 973  (Fed. Cir. 1999).............................14, 16

Jonsson v. Stanley Works, 903 F.2d 812 (Fed. Cir. 1990)..............................................15

Keith H. Jones v. Flowserve FCD Corp.,
73 Fed.Appx. 706 at 708-9,  2003 WL 22002606 (5th Cir. 2003)......................................4

Mark I Marketing Corp. v. R.R. Donnelley & Sons Co.,
66 F.3d 285 (Fed. Cir. 1995)......................................................................14

Markman v. Westview Instruments, Inc., 52 F.3d 967 (Fed. Cir. 1995)...............................9

Multiform Desiccants, Inc. v. Medzam, Ltd.,
133 F.3d 1473 (Fed. Cir. 1998).....................................................................13

Power Mosfet Technologies v. Siemens AG,
378 F.3d 1396 (Fed. Cir. 2004)......................................................................3

Southwall Tech., Inc. v. Cardinal IG Co.,
54 F.3d 1570 (Fed. Cir. 1995).....................................................................14

Spectrum Int'l, Inc. v. Sterilite Corp.,
164 F.3d 1372 (Fed. Cir. 1998).....................................................................14

Wang Labs. v. America Online, Inc., 197 F.3d 1377 (Fed. Cir. 1999)...............................15

This document contains information subject to the Protective Order entered in this action.  Its contents are not to be revealed or made public, except by Order of the Court.

# I.    INTRODUCTION

The accused Inrange Technology Corporation ("Inrange") FC/9000 Fibre Channel switch does not contain at least three elements required by the limitations of claim 1 and claim 34 (the "Asserted Claims") of U.S. Patent No. 5,530,845 (the "845 Patent"):

1)    The FC/9000 is not the "programmable storage controller" required in the Asserted Claims;

2)    The FC/9000 does not contain the required "interface" to the "target units;" and

3)    The FC/9000 is not implemented with a "general purpose computer."

Any one of these missing elements independently entitles Inrange to summary judgment of noninfringement of the '845 patent on all infringement grounds asserted by SBC Technology Resources, Inc. ("SBC").

In Plaintiff SBC's Brief In Opposition to Defendant Inrange's Motion for Summary Judgment of Non-infringement ("SBC's Brief"), SBC failed to raise either a material issue of fact precluding summary judgment or to provide a legitimate legal argument in support of its infringement claim.    As this Reply shows, SBC transparently and repeatedly attempts to eliminate limitations from the Asserted Claims in its endeavor to assert infringement.    Therefore, Inrange should be granted summary judgment of noninfringement.

# II.    BRIEF STATEMENT OF THE FACTS

In its opening brief, Inrange explained (i) how storage controllers work, (ii) what a Storage Area Network ("SAN") is, and (iii) what the Inrange FC/9000 Fibre Channel Director does and how it does it.    SBC did not dispute any of this factual information.    Thus, there are no material issues of fact that bar summary judgment of noninfringement.    In particular, SBC has not disputed the following key facts:

1

This document contains information subject to the Protective Order entered in this action.    Its contents are not to be revealed or made public, except by Order of the Court.

- In a SAN that includes an FC/9000, the FC/9000 interfaces only with storage controllers, not with storage devices.

- In a SAN that includes an FC/9000, it is the responsibility of the storage controllers to accept information from the SAN and interpret that information for the storage devices.

- The Inrange FC/9000 does not examine the contents of any Fibre Channel or FICON payload that is sent between the host computer (server) and storage controller – it merely routes the payload, leaving it to the Host Bus Adaptor or storage controller to interpret the input/output ("I/O") request and act accordingly.

- SAN switches like the Inrange FC/9000 are incapable of interpreting the I/O requests or data storage information sent between the host computer (server) and storage controllers, and they never act on I/O requests by manipulating storage devices (e.g., storage media) attached to storage controllers.

## III.   ARGUMENT

**A.    The FC/9000 Does Not Literally Infringe Claim 1 or 34 of the '845 Patent**

### 1.    The FC/9000 is Not the "Storage Controller" Required in the Asserted Claims

SBC does not dispute that the claims are limited to "a programmable *storage controller*." '845 Patent claims 1 and 34, 15:36-7; 17:66-18:1; APP 21, 22 (emphasis added); SBC's Brief at 11-16. The closest SBC has come to addressing this issue is to state that a storage controller is simply a device "that *controls* or participates in the *control* of storage in some way." See SBC's Claim Construction Reply Brief, Dated November 17, 2004 at 6; SBC's Brief at 12, n. 5.

2

This document contains information subject to the Protective Order entered in this action. Its contents are not to be revealed or made public, except by Order of the Court.

SBC's definition of "storage controller" is meaningless without knowing what "control" means.[1] The patent specification states that:

"[S]torage controller[s] . . . interpret[] the commands and manipulate[] the storage facilities to satisfy a request."

See '845 Patent, 1:29-31; APP 14. "Control" is therefore interpreting the commands and manipulating the storage facilities to satisfy a request.[2]  Instead of offering any definition of "control" in its Brief,[3] SBC simply takes issue with the definition of "storage controller" given in the '845 patent specification because it is found in the "Discussion of Background Information" portion of the patent.[4]  As the Discussion of Background Information section of the '845 Patent shows, the concept of a storage controller predates the patent.  See '845 patent, 1:19-2:14; APP 14.  SBC did not invent storage controllers; it only claimed an improved, "programmable"

---

[1] SBC generally complains that Inrange is seeking a construction of the claim terms that is more in-depth than was originally briefed in the original Claim Construction briefings.  Setting aside the fact that such additional claim construction is necessary because of SBC's labored infringement arguments, claim construction is a matter of law that a Court may supplement and rule upon at any time during the litigation of a patent case.  See Power Mosfet Technologies v. Siemens AG, 378 F.3d 1396, 1410-14 (Fed. Cir. 2004).

[2] SBC is disingenuous when it says Inrange offered no definition of what "manipulating" means.  To the contrary, in its opening brief, Inrange provided a description of how storage controllers work with and manipulate disks or tapes.  Inrange's Brief at 6-8.  SBC never disputes this description.  Furthermore, at p. 3 of its own brief, SBC obviously knows what it means to "manipulate," as it discusses storage controllers that "manipulate" storage devices such as disks or tapes.  SBC's Brief at 3 ("Therefore, the claimed programmable storage controller cannot 'manipulate' . . . the storage devices in these "other storage facilities' – the second controller 32 fills that role.").

[3] In a footnote, SBC states that a "storage controller" can be anything that "participates in the control of storage in some way."  SBC's Brief at 12, n. 5 (emphasis in original).  In fact, SBC wants to read the word "control" both out of the term "storage controller" and its definition of that term.  The result is a meaningless definition of "storage controller" as anything that participates in storage in some way.  Later in its argument, SBC rephrases its argument by stating a "storage controller" can be anything that "transfer[s] information."  SBC's Brief at 14-15.  By SBC's definition, a "storage controller" could be anything in a SAN including the connecting wires.

[4] SBC also dismisses its own inventors' testimony against SBC's construction of "storage controller" because Inrange did not allow the inventors to review technical documents regarding the FC/9000.  See SBC's Brief at 15-16.  SBC's argument on this issue is an affront to patent law.  Claim construction is not done by comparing the words of the claims to the device the patentee accuses of infringement and then manipulating the meaning of those claims to cover that device.  Claim construction is an independent inquiry into the meaning of the claims of a patent.  Bell Atlantic Network Services, Inc. v. Covad Communications Group, Inc., 262 F.3d 1258, 1267 (Fed. Cir. 2001) ("The determination of infringement is a two-step process.  First, the court construes the claims to correctly determine the scope of the claims.  Second, it compares the properly construed claims to the accused device.") (emphasis added) .

3

This document contains information subject to the Protective Order entered in this action.  Its contents are not to be revealed or made public, except by Order of the Court.

storage controller. Id. The invention of the '845 Patent is a particular type of storage controller. Therefore, the Discussion of Background Information provides the proper intrinsic evidentiary context for construing the term "storage controller."

SBC's assertion that the claimed "programmable storage controller" need not be capable of interpreting commands and manipulating storage facilities to satisfy a host computer's request is based on the language of claim 25 (that depends from claim 1) and Figure 4 of the '845 Patent. SBC and its expert, Andrew Hospodor, are correct in stating that Figure 4 of the '845 patent shows the embodiment claimed in claim 25. See SBC's Brief at 2-3, 8, 13-14; Declaration of Dr. Andrew Hospodor at ¶3; SBC's Appendix at 21.[5] However, SBC is wrong in asserting that language of claim 25 and the depiction of that claim shown in Figure 4 contradict the requirement that a "storage controller" be a device that interprets commands and manipulates storage facilities to satisfy a request. See SBC Brief at page 13.

Claim 25 states:

The storage control subsystem according to claim 1, wherein one of said first and second interfaces *further* comprises an interface to *another* storage controller, and further wherein the programmable storage controller comprises a communication bridge for communicating with said another storage controller.

'845 Patent, 17:28-32; APP 22 (emphasis added).

Reproduced below is Figure 4 of the '845 patent:

---

[5] The Declaration of Dr. Andrew Hospodor is nothing more than an attempt to supplement his expert report. Dr. Hospodor had the obligation to disclose the ENTIRE basis for his opinion in his original expert report. Fed. R. Civ. P. 26(a)(2)(B) ("The report *shall* contain a *complete* statement of *all* opinions to be expressed *and* the basis and reasons therefore; . . .") (emphasis added.); See Keith H. Jones v. Flowserve FCD Corp., 73 Fed.Appx. 706 at 708-9, 2003 WL 22002606 at **3 (5th Cir. 2003) (holding the district court did not err in striking an expert's affidavit and granting summary judgment where opinions and evidence in that affidavit were not disclosed in the expert's initial report). He is an expert witness, not a fact witness; therefore his testimony should be limited to that which was disclosed in his original expert report. If this motion for summary judgment is not granted, Inrange requests that Dr. Hospodor's declaration be stricken from the record and Dr. Hospodor not be allowed to testify at trial to matters in that declaration that are beyond the disclosures he made in his original report.

This document contains information subject to the Protective Order entered in this action. Its contents are not to be revealed or made public, except by Order of the Court.



Fig - 4



' 845 Patent; APP 12.  As SBC admits, Figure 4 shows the following:

- The "programmable storage controller" of the invention – item "**14**"

- The required "second interface" of the Asserted Claims – item "**20**"

- The required "storage facilities" or "target units" of the Asserted Claims – item "**16**"

- A second "other storage controller" or "other storage facilities" described in claim 25 – item "**32**"

(emphasis added).

The '845 patent describes these "other storage facilities" 32 depicted in Figure 4 as *"an additional 'other' storage controller."* '845 Patent 13:64 (emphasis added); APP 20; see also '845 Patent 13:61-14:24; APP 20.  SBC admits that the "other storage facilities" 32 *are not* the "target units" required in the Asserted Claims, but rather an additional "other" storage controller:

- "In the embodiment of FIG. 4, the 'other storage facilities,' include a second, 'other storage controller' 32.  The programmable storage controller 14 *is connected to*

This document contains information subject to the Protective Order entered in this action.  Its contents are not to be revealed or made public, except by Order of the Court.

*storage controller 32, which in turn communicates with the storage devices (called*

*target units in the asserted claims)* within the 'other storage facilities.'" SBC Brief at

6 (emphasis added).

- SBC's acknowledgement that "other storage facilities" 32 is an additional "other

storage controller" is also shown in SBC's modified Figure 4 diagram:



SBC's Brief at 6, 13 (emphasis added).

- "Therefore, the claimed programmable storage controller cannot 'manipulate' and is

*not 'directly connected' to the storage devices* in these 'other storage facilities' – the

*second controller 32* fills that role." SBC's Brief at 3 (emphasis added).

The "storage facilities" 16 are the "target units" described in claim 1 as interfacing with

the "second interface" 20. These "storage facilities" 16 and cannot be written out of either claim

1 or claim 25 as they are a necessary limitation. As a result, regardless of whether there are

additional connections, the "programmable storage controller" 14 in claim 1 and claim 25 must

6

This document contains information subject to the Protective Order entered in this action. Its contents are not to be revealed or made public, except by Order of the Court.

be able to interface to and "control" target units ("storage facilities" 16) (i.e. interpret commands and manipulate the storage facilities to satisfy a request). Without such a "control" capability in the claimed "programmable storage controller" 14 even as shown in Figure 4, no data could be written to or read from the storage media that constitute "storage facilities" 16 (the "target units"). SBC's argument effectively redraws Figure 4 to remove the "storage facilities" 16 entirely:



SBC is arguing that because claim 25 allows for the connection of an *additional* "other storage controller" 32 that interprets commands and manipulates "*other* storage facilities," that the *original* "programmable storage controller" 14 of the Asserted Claims need not do the same with the *original* "storage facilities" 16. However, both the "programmable storage controller" 14 and "other storage controller" 32 are *storage controllers* and the same requirement of "control," i.e. interpreting commands and manipulating storage facilities to satisfy a request, must apply to both.

This document contains information subject to the Protective Order entered in this action. Its contents are not to be revealed or made public, except by Order of the Court.

In other words, the existence of a second "other" storage controller in claim 25 in no way replaces the requirement that the claimed "programmable storage controller" 14 be able to control "target units" ("storage facilities" 16).  SBC has adopted this interpretation of the Asserted Claims because it admits that the Inrange FC/9000 switch is incapable of controlling and manipulating storage devices.[6]  Because of the absence of this central claim element, summary judgment is appropriate.

### 2.    The FC/9000 Does Not Contain the Required "Interface" to "Target Units"

SBC's strained infringement theory also forces it to ignore the direct connection between the "second interface" 20 of the claimed "programmable storage controller" 14 and the "target units" ("storage facilities" 16).  As previously noted, Claim 25 depends from claim 1, meaning claim 25 includes both the additional claim limitations it adds *and* the original limitations of claim 1.  The relevant limitations required by claim 1 include[7]:

- A programmable storage controller ('845 Patent claim 1, 15:36; APP 21); and

- A second interface between the programmable storage controller and the target units.

    '845 Patent claim 1, 15:48-49; APP 21.

Claim 25 adds an additional requirement that the "second interface" also serve as an interface to a second storage controller:

25. The storage control subsystem according to claim 1, wherein one of the first or second interfaces *further comprises* an interface to *another* storage controller....

---

[6] Manipulating storage devices is not included among the FC/9000 functions SBC's describes in support of its argument that the FC/9000 is a "storage controller."  See SBC's Brief at 16-19 (describing SBC's view of the routing functionality associated with arbitrated and public/private loops, maintaining a name server, implementing a CUP, and implementing a Simple Network Messaging Protocol.)

[7] Claim 34 also requires a "programmable storage controller" and "interfacing said programmable storage controller with said target units."  See '845 Patent claim 34 at 17:66, 18:10-11; APP 22.

This document contains information subject to the Protective Order entered in this action.  Its contents are not to be revealed or made public, except by Order of the Court.

'845 Patent 17:28-32; APP 22 (emphasis added).

While Figure 4 depicting claim 25 shows that the "second interface" 20 connects to an "additional 'other' storage controller" 32, SBC fails to acknowledge that in both claim 1 and claim 25 the programmable storage controller 14 *still must also* be directly connected to "storage facilities" 16 via that same "second interface" 20. '845 Patent 13:61-5; APP 20. It is axiomatic in patent law that a dependent claim includes all of the limitations of the independent claim. Markman v. Westview Instruments, Inc., 52 F.3d 967, 1000 (Fed. Cir. 1995).

In other words, as is plain from Figure 4, the "second interface" 20 *has two devices directly attached to it* – first, "storage facilities" 16 (i.e. the required "target units" of the Asserted Claims), and second, "other storage facilities" 32 (i.e. an additional 'other' storage controller of claim 25). There is nothing in claim 25, Figure 4, or any other portion of the patent that in any way indicates that the "second interface" 20 is attached to "an additional 'other' storage controller," *in lieu of* connecting that same "second interface" 20 directly to the required "storage facilities" 16.

With respect to the requirement of the second interface found in the Asserted Claims, SBC's infringement theory requires that it effectively redraw Figure 4 as follows:

9

This document contains information subject to the Protective Order entered in this action. Its contents are not to be revealed or made public, except by Order of the Court.





SBC makes a number of arguments to cover up its need to rewrite the Asserted Claims. These arguments run afoul of the law and SBC's own admissions. SBC first argues that because claim 25 depends from claim 1, claim 1 must be broad enough to encompass claim 25. This argument is irrelevant. Claim 1 of the '845 patent is best depicted in Figure 1, reproduced below:

10

This document contains information subject to the Protective Order entered in this action. Its contents are not to be revealed or made public, except by Order of the Court.

Fig - 1



' 845 Patent; APP 6.  In Figure 1, all of the elements of claim 1 relevant to this motion are shown:

- The "programmable storage controller" of the invention – item "**14**"

- The required "second interface" of the Asserted Claims – item "**20**"

- The required "storage facilities" or "target units" of the Asserted Claims – item "**16**"

(emphasis added).

Inrange agrees that an apparatus built according to the embodiment shown in Figure 4 would also infringe claim 1.  However, contrary to SBC's assertion, the fact that the "second interface" 20 of Asserted Claims can perform functions *in addition to* acting as the required interface to the "target units" ("storage facilities" 16) does not mean that this limitation can be removed entirely from Asserted Claims.  The problem faced by SBC is that the FC/9000 does

11

This document contains information subject to the Protective Order entered in this action.  Its contents are not to be revealed or made public, except by Order of the Court.

not ever have an interface to any "target units" (i.e. a device that under the patent would be "storage facilities" 16).

Further, SBC incorrectly, and without support from the patent, argues that the term "interface" as used in the patent does not require a direct connection between the "programmable storage controller" 14 and the "storage facilities" 16 ("target units"). Inrange will not here repeat the arguments made in its opening brief; however, in every instance in the written description where the "'second interface' 20" is discussed, the connection between that "'second interface' 20" and the "target units" ("storage facilities" 16) is always direct:

> Second interface 20, which is *coupled* to storage facilities 16, may comprise one or more standard high-speed parallel interfaces, such as SCSI interfaces.

6:67-7:2; APP 16 – 17. (emphasis added)

> Referring to FIG. 1 . . . . Storage facilities 16 are also connected to programmable storage controller 14, through a second interface 20.

6:43-50; APP 16.[8]

> Meanwhile, storage facilities 16 are connected to second interface 20 of the computer 15 via storage facility connectors 24.

6:55-57; APP 16.[9]

SBC's attempt to ignore the overwhelming intrinsic evidence regarding the direct connection between the "programmable storage controller" 14 and the "target units" ("storage facilities" 16) should be rejected.

---

[8] See the direct connection between "programmable storage controller" 14 and "storage facilities" 16 shown in Figure 4, which SBC admits "expressly" depicts Claim 25. SBC's Brief at 2-3, 8, 13-14.

[9] The one time in the written description where the required "'second interface' 20" is shown as being directly connected to a device other than "storage facilities" 16 ("target units") is where, in describing the embodiment of Figure 4 (claim 25), the second interface is described as being connected to "an additional 'other' storage controller" 32. '845 Patent 13:64-65; APP 20. However, that interface also is described and shown as a direct connection. Id.; Fig. 4; APP 12.

This document contains information subject to the Protective Order entered in this action. Its contents are not to be revealed or made public, except by Order of the Court.

Finally, SBC does not dispute that the FC/9000 cannot be directly attached to target units, but instead is always attached to an intermediary storage controller. The FC/9000 is incapable of manipulating any storage media, and, in fact, is incapable of manipulating even the storage controllers to which the Inrange FC/9000 switch is directly attached. Harry Paul Deposition Vol. 2 at 187, 194, 280:22-24; APP 201, 202, 203. Therefore, the FC/9000 does not contain the required "second interface" for interfacing to "target units."

### 3.     The FC/9000 is Not Implemented With a "General Purpose Computer"

SBC fails to acknowledge that during prosecution of the '845 Patent it disavowed all embodiments of a "programmable storage controller" implemented on anything other than a "general purpose computer." Inrange has already briefed this issue both in its Claim Construction brief and in its opening brief in support of this motion and will not repeat those arguments. Inrange will, however, address the arguments SBC raised in its opposition brief.

SBC incorrectly asserts that it may recapture claim scope that it disavowed simply because the patent gives definitions for both "computer" and "general purpose computer" and that there are claims that use both terms. It is well settled that the doctrine of claim differentiation is not a 'hard and fast' rule of construction and must be set aside if necessary to form a proper claim construction. See Bristol-Myers Squibb Co. v. Ben Venue Labs. Inc., 246 F.3d 1368, 1376 (Fed. Cir. 2001); Multiform Desiccants, Inc. v. Medzam, Ltd., 133 F.3d 1473, 1480 (Fed. Cir. 1998) ("[T]he doctrine of claim differentiation can not broaden claims beyond their correct scope, determined in light of the specification and the prosecution history and any relevant extrinsic evidence.").

SBC is also incorrect in stating a disavowal of claim scope cannot limit the meaning of a claim term. In fact, it is black-letter law that statements made by a patentee during prosecution

This document contains information subject to the Protective Order entered in this action. Its contents are not to be revealed or made public, except by Order of the Court.

not only can, but <u>must</u> limit a claim's scope.  <u>Bell Atlantic Network Servs., Inc</u>, 262 F.3d at

1268; <u>Spectrum Int'l, Inc. v. Sterilite Corp.</u>, 164 F.3d 1372, 1378-1379 (Fed. Cir. 1998);

<u>Southwall Tech., Inc. v. Cardinal IG Co.</u>, 54 F.3d 1570, 1576 (Fed. Cir. 1995).  As Inrange has

shown in its previous briefs, SBC made such a disavowal and cannot now run from its statements

in the hope of illegitimately broadening its claim scope for litigation purposes.

SBC's focus on the amendment it made in its continuation application is irrelevant.

Statements and previous amendments made by SBC during prosecution can limit a claim's scope

regardless of any further claim amendments.  <u>Elkay Mfg. Co. v. Ebco Mfg. Co.</u>, 192 F.3d 973,

979 (Fed. Cir. 1999) ("Arguments made during the prosecution of a patent application are given

the same weight as claim amendments.").  SBC cannot escape the limitations imposed by its

statements regarding an amendment adding the term "general purpose computer" even if they

were, by themselves, inadequate to overcome the prior art.  <u>Desper Products, Inc. v. Qsound</u>

<u>Labs, Inc.</u>, 157 F.3d 1325, 1335-36 (Fed. Cir. 1998) ("That the prosecution shifted to a different

focus does not blunt the impact of those remarks made to overcome the prior rejection.  The

significance of the remarks in this case is no different than in a case in which the claims are

allowed in response to an amendment.").

Furthermore, SBC cannot attempt to amend its claim through a continuation and regain

the claim scope it relinquished during prosecution.  <u>Mark I Marketing Corp. v. R.R. Donnelley &</u>

<u>Sons Co.</u>, 66 F.3d 285, 291-292 (Fed. Cir. 1995) (finding the patentee had surrendered the patent

scope that it attempted to avoid through filing new patents rather than responding to the office

actions); <u>Desper Products, Inc.</u>, 157 F.3d at 1333-1336; 1338-1339 (Fed. Cir. 1998)

("[P]rosecution history estoppel cannot be avoided by filing a continuing application with

narrowed claims rather than responding directly to an outstanding rejection."); <u>Biovail Corp.</u>

14

This document contains information subject to the Protective Order entered in this action.  Its contents are not to be
revealed or made public, except by Order of the Court.

International v. Andrx Pharmaceuticals, Inc., 57 U.S.P.Q.2d 1813, 1816-17 (Fed. Cir. 2001) (the prosecution history of the parent application applies to the child patent's claim construction); Wang Labs. v. America Online, Inc., 197 F.3d 1377, 1384 (Fed. Cir. 1999) (statements made to distinguish prior art in a parent application apply to the child application); Jonsson v. Stanley Works, 903 F.2d 812, 818 (Fed. Cir. 1990) (where a term is contained in both the parent and child patent, remarks and arguments the patentee made during the prosecution of the parent regarding that term is relevant to defining the term in the child patent).

SBC is further incorrect in suggesting the only reason it did not challenge the Examiner's Statement of Reasons for Allowance was because the Examiner's statement regarding a general purpose computer was limited to "claim 45." SBC's Brief. at 25. In fact, the Examiner's Statement reads:

> This programmable storage controller is implemented with <u>application programs</u> <u>and a general-purpose computer</u> that allows for the user to switch between these application programs without reloading or changing <u>the operating system</u>, or physically modifying the hardware configuration. . . .
>
> The examiner considers the **applicants' claims 2-17, 19-31, 33-40, 43,** **and 45-54** to be allowable based on the claim interpretation and the aforesaid prior arts of record.

APP 69 (emphasis added). Claim 45 of the application eventually became claim 1 of the issued patent and claim 48 of the application eventually became claim 34 of the issued patent.[10] Therefore, the Examiner's statement <u>explicitly</u> addressed his comments to issued claims 1 and 34 of the '845 patent.[11] Moreover, SBC cannot simply dismiss the Examiner's statement, especially

---

[10] A complete copy of the File History of the '845 Patent can be found at tab G to Inrange's Claim Construction Appendix.

[11] The examiner cited 48 claims that were allowed according to the aforementioned "claim interpretation" that requires the "general-purpose computer" limitation. It is no coincidence that exactly 48 claims issued in the '845 Patent. In contrast, despite the Examiner explicitly listing every claim ultimately issued in the patent, SBC would have the Court believe only one claim, claim 45, was the focus of the Examiner's statement.

This document contains information subject to the Protective Order entered in this action. Its contents are not to be revealed or made public, except by Order of the Court.

where SBC had an opportunity to counter that statement and failed to seek a correction. <u>See</u> <u>Elkay Mfg. Co.</u>, 192 F.3d at 979; <u>Bell Atlantic Network Servs.</u>, 262 F.3d at 1273. The Examiner's statement, coupled with the numerous statements by SBC, require that the "computer" of the Asserted Claims be a "general purpose computer."

SBC attempts to circumvent the "general purpose computer" requirement by characterizing components in the FC/9000, such as I960 microprocessor chips, as general purpose computers. A definition of "general purpose computer" that is so broad as to encompass microprocessor chips is meaningless. Indeed during the prosecution of the '845 patent, SBC agreed that such a broad definition was improper:

> [A] [m]icroprocessor . . . <u>is no more a general purpose computer than an engine is an automobile.</u>

Applicant's Response Under 37 C.F.R. 1.116 dated October 14, 1994 at 8-9; I001403-18; APP 60-61 (emphasis in original). SBC cannot now ignore its prior statements simply to suit its current theory of infringement.

Finally, SBC cannot avoid the Asserted Claims' requirement that the "programmable storage controller be[ . . .] implemented with an application program and a computer" by simply stating "[t]he FC/9000 is also managed with a personal computer." Claims 1 and 34 of the '845 patent, 15: 38-39, 18:1-3; APP 21, 22; SBC's Brief at 26. It is true that a standard personal computer ("PC"), may be connected to the FC/9000, but that PC, when used, is only for the configuration and management of the FC/9000 switch and does not participate in the movement of data through the switch or the implementation of the CUP function. Report of Robert D. Young at 10, ¶28 (Per conversation with Larry Cantwell, February 14, 2005) APP 80. Therefore, the PC is simply used to manage the FC/9000 and is not the "general purpose computer" required by the claims to implement the "programmable storage controller" of the invention.

16

This document contains information subject to the Protective Order entered in this action. Its contents are not to be revealed or made public, except by Order of the Court.

**B.      The Inrange FC/9000 Switch Does Not Infringe the '845 Patent Under the Doctrine of Equivalents**

In its Brief, SBC ignores the fact that it no longer has a right to present an argument under the doctrine of equivalents.  SBC had the opportunity to present its doctrine of equivalents analysis both in its expert report by Dr. Andrew Hospodor and in response to Inrange's Interrogatory No. 1.  See APP 28-30.  SBC provided no such analysis and therefore has no "right" to reserve.  Summary judgment of noninfringement under the doctrine of equivalents should therefore be granted.

**C.      Inrange Does Not Induce Nor Contribute to Infringement of the '845 Patent**

In the context of this summary judgment motion, Inrange contends there is no induced and contributory infringement because there is no direct infringement.  Both SBC and Inrange agree that if SBC's direct infringement accusations fail, so must SBC's claims of infringement under induced or contributory infringement.[12]

**D.      SBC Has Abandoned Any Infringement Claims Other Than Under Claims 1 and 34 of the '845 Patent**

Inrange noted in its original brief that SBC's Complaint did not specify which claims of the '845 patent were asserted against Inrange.  SBC has provided no evidence or expert opinion of infringement under any claims other than claims 1 and 34.  SBC has itself referred to these as the "asserted claims."  SBC's Brief at 1.  SBC has therefore relinquished all other infringement claims and the Court should grant summary judgment of noninfringement as to claims 2-33 and 35-48.

---

[12] To the extent its Motion for Summary Judgment is not granted, Inrange reserves the right to assert at trial additional reasons it does not induce nor contribute to infringement.

17

This document contains information subject to the Protective Order entered in this action.  Its contents are not to be revealed or made public, except by Order of the Court.

## IV.    CONCLUSION

The Inrange FC/9000 switch:  is not the required "storage controller;" does not have the required "interface" with the "target units" (storage devices); and is not implemented with the required "general purpose computer."   Each of these missing claim elements individually provides a sufficient basis for granting the relief requested by Inrange: entry of summary judgment of non-infringement and dismissal of this cause of action with prejudice.


Respectfully submitted,


INRANGE TECHNOLOGIES CORP.

By: *Kevin D. Conneely*        by permission Eric D. Madden

Kevin D. Conneely (MN Bar No. 192703) # 24013079
Douglas B. Greenswag (MN Bar No. 150186)
David D. Axtell (MN Bar No. 314596)
Gabriel K. Holloway (MN Bar No. 320778)
Admitted Pro Hac Vice

Dated: April 11th, 2005

LEONARD, STREET & DEINARD
Professional Association
150 South Fifth Street
Suite 2300
Minneapolis, MN  55402
Tel:    (612) 335-1500
Fax:    (612) 335-1657

AND

William T. Reid, IV
DIAMOND, MCCARTHY, TAYLOR, FINLEY, BRYANT & LEE, LLP
6504 Bridge Point Parkway
Suite 400
Austin, TX  78730
Tel:    (512) 617-5205
Fax:    (512) 617-5299

AND

18

This document contains information subject to the Protective Order entered in this action.  Its contents are not to be revealed or made public, except by Order of the Court.

J. Benjamin King
Eric D. Madden
DIAMOND  MCCARTHY,  TAYLOR,  FINLEY,
BRYANT & LEE, LLP
Renaissance Tower
1201 Elm Street, 34th Floor
Dallas, TX  75270
Tel:    (214) 389-5300
Fax:    (214) 389-5399

*Attorneys for InRange Technologies Corporation*

This document contains information subject to the Protective Order entered in this action.  Its contents are not to be revealed or made public, except by Order of the Court.